**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRYAN MONTGOMERY** | **:** | **CIVIL ACTION** |
| | **:** | |
| **v.** | **:** | **NO.  21-5485** |
| | **:** | |
| **TRAVELERS PERSONAL** | **:** | |
| **INSURANCE COMPANY** | **:** | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                    **May 16, 2022**

Businessperson Bryan Montgomery admittedly stored business inventory in a detached garage on his residential property for a decade before a fire damaged his residence and detached garage. His homeowner insurer paid for the loss to his residence under agreed insurance policy language issued to him as the insured. But the insurer declines to cover the loss of the detached garage arguing its insurance policy precludes coverage for loss to a detached garage used to "store" business property, and Mr. Montgomery admits he stored inventory in the garage. Simple enough, but we cannot ignore the insurer (in the same subsection of the Policy) agrees to pay for loss to a detached garage which "contains" business property solely owned by the insured. The parties agree no genuine issues of material fact exist and each move for summary judgment as a matter of law. We find the insurer did not breach the agreed policy terms by declining to pay for the loss to the detached garage because the term "store" in the exclusion is understandably different than the term "contains" in the exception as a matter of law. The exception allowing coverage for a structure which "contains" business property solely owned by the insured Mr. Montgomery does not apply. He instead admittedly "stored" inventory for his businesses in the detached garage. We grant summary judgment to the insurer.

I.   **Undisputed facts[1]**

Bryan Montgomery owns property in New Hope, Pennsylvania improved with a house, a detached garage, and a shed (the "Property").[2] Mr. Montgomery built the detached garage about fifteen years ago.[3] It is a three-level structure including a basement, each level approximately thirty-feet by thirty-feet, situated adjacent to Mr. Montgomery's house.[4] The first and second stories of the garage are open spaces with no interior rooms.[5]

Mr. Montgomery, along with his ex-wife and current wife, also owned and managed various businesses including a brick-and-mortar store in New Hope, an online retail store, and an import company.[6] The import company, One of a Kind LLC, held or owned all of the inventory sold in the brick-and-mortar store and in the online retail store.[7]

Mr. Montgomery used his detached garage to store business property, mostly retail inventory, for the last ten years but "especially in [] the last five years."[8] Mr. Montgomery used all three levels of the detached garage to store the inventory.[9] The inventory in the garage backfilled items sold to retail customers at the brick-and-mortar store or online.[10] The business entity One of a Kind LLC owned the retail inventory stored in the detached garage.[11]

*Mr. Montgomery and Travelers's homeowners insurance Policy terms.*

Mr. Montgomery purchased a homeowners insurance policy (the "Policy") from Travelers Personal Insurance Company to insure the Property.[12] Mr. Montgomery is the named insured.[13] His businesses are not mentioned on his personal homeowners policy. The Policy provides coverage for Mr. Montgomery's dwelling, other structures on the Property, Mr. Montgomery's personal property, and loss of use.[14]

Travelers agreed to insure for direct physical loss to property, namely the dwelling and other structures.[15] Travelers's Policy generally provides coverage for "other structures" on the Property set apart from the "dwelling" (*i.e.*, the house) by "clear space."[16] The parties agree the

detached garage is a structure on the Property set apart from the dwelling by clear space.[17] But the Policy does not cover all other structures set apart from the dwelling by clear space; it rather contains four exclusions to this general rule:[18]

**PROPERTY COVERAGE B – OTHER STRUCTURES**

1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line or similar connection. It also includes other structures that are not buildings, including driveways, walkways and patios.

2. We do not cover:
   a. Land, including land on which the other structures are located;
   b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage. We do cover other structures rented to others as a private residence for which a limit of liability is shown in the Declarations for Structures Rented to Others;
   c. Other structures from which any "business" is conducted; or
   d. Other structures used to store "business" property. We do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

The exclusion for other structures used to "store" business property (*i.e.*, exclusion 2(d)) also contains an exception in the next sentence in the same subsection of the Policy. The exception excepts other structures "that contain[] 'business' property solely owned by an 'insured'" from the exclusion.[19] The Policy defines "business."[20] The parties do not dispute the retail inventory stored in the detached garage is business property.

### *A fire damages the dwelling, shed, and detached garage.*

A fire occurred at the Property on January 22, 2021.[21] The dwelling, shed, and detached garage all sustained direct physical damage because of the fire.[22] Mr. Montgomery submitted a claim to Travelers for his loss in accordance with the terms of the Policy.[23]

Travelers paid Mr. Montgomery for all loss or damage from the fire except for the damage to the detached garage.[24]

### II.   Analysis

Mr. Montgomery sued Travelers for one count of breach of contract for failing to cover the damage to the detached garage.[25] The parties now cross-move for summary judgment arguing

we should enter judgment in their respective favors agreeing there are no genuine issues of material fact and we may enter judgment as a matter of Pennsylvania law.[26]

The parties agree Pennsylvania law applies.[27] "It is well established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages."[28] The parties also agree they have a contract and stipulate to the damages in this case.[29] Our only issue is whether Travelers breached the parties' contract by failing to pay Mr. Montgomery for the damage to his detached garage.

Travelers maintains the damage to the detached garage is not covered under the Policy because: (1) Mr. Montgomery conducted business out of the garage; or (2) Mr. Montgomery stored business property in the detached garage—both of which the Policy excludes.[30] Mr. Montgomery maintains he should be afforded coverage for the damage to the garage because: (1) he did not conduct business out of the garage; (2) the Policy affords coverage for storing business property in the garage; and (3) even if Mr. Montgomery conducted business, the Policy is ambiguous and should be construed against the insurer in favor of coverage.[31]

When interpreting insurance contracts under Pennsylvania law, our "primary consideration . . . is 'to ascertain the intent of the parties as manifested by the language of the written instrument.'"[32] We must read the Policy as a whole and construe it according to the plain meaning of its terms.[33] We construe "[w]ords of common usage. . . 'in their natural, plan, and ordinary sense, with a court free to consult a dictionary to inform its understanding of terms.'"[34]

In Pennsylvania, "[t]he interpretation of an insurance contract is a question of law."[35] We must give effect to clear and unambiguous policy language.[36] We must interpret an insurance policy to avoid ambiguities and give effect to all policy provisions.[37]

4

Applying these principles mandates we find the parties did not agree Travelers would insure damage to the detached garage used to store business property. Our analysis is aided by Mr. Montgomery admitting he stored business property in the garage.[38] His admission of storing business property seemingly results from his misapprehension of the Policy terms specifically *excluding* coverage for "other structures" used to **store** business property but permitting coverage for structures which **contain** business property solely owed by the named insured. Despite the parties' extensive briefing on whether Mr. Montgomery conducted business out of the garage, and Mr. Montgomery's contention this is the only issue in the case, the exclusion at issue is whether Mr. Montgomery stored business property in the detached garage. He admits doing so. Mr. Montgomery may argue the garage "contains" business property, and while Mr. Montgomery does not argue the exception to this exclusion affords him coverage, we also find there is no genuine issue the exception does not apply despite Mr. Montgomery now disavowing the previously undisputed fact One of a Kind LLC owned the inventory and not him.

We grant Travelers's motion for summary judgment finding it has not breached a contractual obligation to Mr. Montgomery.

### A. The Policy unambiguously excludes other structures used to store business property.

We begin with the Policy language. The Policy provides coverage for "other structures on the 'residence premises' set apart from the dwelling by clear space."[39] The parties do not dispute the detached garage at issue here constitutes an "other structure" for which the Policy generally provides coverage.[40] The Policy, however, excludes coverage for the detached garage in specifically enumerated instances. It excludes coverage for "[o]ther structures from which any 'business' is conducted" and for "[o]ther structures used to store 'business' property."[41] The exclusion for other structures used to store business property contains an exception. The Policy

*does* cover other structures which "contain" business property "solely owned" by an insured.[42]
Travelers asserts both exclusions apply. Mr. Montgomery disputes he conducted business in the
garage and argues this exclusion does not apply. He also argues the Policy *provides* coverage for
other structures used to store business property.

We begin with Mr. Montgomery's argument the Policy covers other structures used to
store business property. Mr. Montgomery continuously argues in his briefing the Policy provides
coverage for other structures used to store business property.[43] The Policy does exactly the
opposite. In doing so, he copies and pastes a portion of the Policy with no other context or
argument.[44]  It seems Mr. Montgomery thinks if he says it enough, it will be true. But selectively
"snipping" the Policy language out of context to say the Policy provides coverage for something
specifically excluded is belied by the clear, unambiguous terms of the Policy read logically in
sequential order.

The section relating to "other structures" begins with the coverage clause generally
providing coverage for "other structures" on the residence premises set apart from the dwelling
by clear space.[45] The Policy's *exclusions* as to "other structures" follow immediately after. The
Policy reads "2. We do **not** cover:" immediately followed by a list of four instances where the
"other structure" is not covered under the Policy.[46] The exclusions are specifically enumerated
with letters "a." through "d.". Mr. Montgomery continuously snips the language in subsection d
arguing this language means the Policy covers other structures used to store business property.
This is demonstrably false. The Policy excludes coverage for other structures used to store
business property under its clear, unambiguous terms.

There is no dispute Mr. Montgomery stored business property (inventory) in the garage.
Mr. Montgomery repeatedly admits he did so.[47] The Policy excludes "other structures" used to

store business property. He used the garage to store business property. The garage is excluded from coverage unless an exception applies.

**B.   The exception for a structure "containing" business property does not apply.**

The Policy excludes coverage for structures used to "store" business property. But the parties agreed to an exception to the word "store" to allow coverage for a structure which "contains" business property owned by the insured or his tenant. Mr. Montgomery curiously never invokes this "contains" exception. He just argues the Policy provides coverage *generally* for all other structures used to store business property. He ignores the exclusion.

But we need to address all the Policy language despite Mr. Montgomery's lack of argument, giving the benefit of the doubt he means to argue the exception to the exclusion applies given the obvious exclusion for a structure used to business property.[48] But there are still two glaring issues with Mr. Montgomery's argument even with our liberal construction. First, despite Mr. Montgomery's repeated mistake the Policy covers other structures used to *store* business property, the exception to the exclusion does not use the word "store." The exception uses the word "contains" while the exclusion uses the word "store". And second, the exception applies *only* to other structures which contain business property "solely owned by an 'insured' or a tenant of the dwelling."[49] Mr. Montgomery needs to demonstrate both for the exception to apply.  He does not meet this burden on either.

We must determine whether Travelers agreed to provide coverage for other structures used to *store* business property when the business property is solely owned by the insured or whether the parties contracted for something different when they used the word "contains" in the exception, not "store" as in the exclusion. While Mr. Montgomery chooses to ignore the plain text of the exception to this exclusion in the Policy, we cannot. We conclude the parties did not

contract for coverage of other structures used to store business property solely owned by the insured as suggested by Mr. Montgomery. The exception only applies to other structures which contain business property solely owned by the insured.[50]

Mr. Montgomery asserts: "[Travelers] argues that [Mr. Montgomery] does not own the [business] property so coverage could not attach as the policy only covers other structures used to store business property owned by the insured."[51] This is not Travelers's argument at all. Travelers's argument regarding this exclusion and the exception is two-fold. First, Travelers argues the exclusion applies because the Policy generally excludes other structures used to store business property.[52] We agree with Travelers. Second, Travelers anticipated Mr. Montgomery may argue the exception to the exclusion applies and argued the exception does not apply because: (1) Mr. Montgomery does not solely own the property stored in the garage; and (2) "store" and "contain" mean two different things so the exception does not apply regardless of who owns the business property in the garage.[53] We must first determine the meaning of the exclusion and the exception to it before we reach the issue of who owns the property in the garage.

### 1. "Store" and "contain" are two different, unambiguous concepts.

We conclude the parties intended to contract for two different things when they used two different verbs in the exclusion and exception; thus, the Policy does not cover other structures used to store business property even when the business property is owned solely by the insured. We again return to the Policy language. The Policy provides "[w]e do not cover . . . other structures used to **store** 'business' property" but "[w]e do cover a structure that **contains** 'business' property solely owned by an 'insured.'"[54] The exclusion uses "store" while the exception uses "contains." These sentences appear within the same subsection of the Policy,

directly next to each other, yet use different verbs. We conclude "[i]f the [exclusion and the exception] were intended to have the same meaning, they would have the same language."[55]

The Pennsylvania Superior Court addressed an analogous issue interpreting an insurance contract in *Clark v. MMG Ins. Co.*[56] In *Clarke*, the Pennsylvania Superior Court interpreted an auto-insurance policy's use of different language in two different exclusions for uninsured motorist coverage and underinsured motorist coverage within the same policy.[57] On appeal, the insureds argued the trial court "erred when it treated the different exclusionary language used by the insurer in the Uninsured Motorist [] coverage provision, which was not present in the UIM coverage provision, as surplusage," and thus erred in finding they did not have coverage.[58] The Pennsylvania Superior Court agreed with the insureds.[59] It found the uninsured motorist exclusion excluded coverage "for injuries sustained in vehicles 'not insured for this coverage under this policy'" while the underinsured motorist exclusion did not include the "under this policy" language.[60] The court concluded the "under this policy" language is not mere surplusage which can be ignored when interpreting the policy as a whole.[61] The court reasoned "[i]f the [] exclusions were intended to have the same meaning, they would have the same language."[62] Because the exclusions did not use the same language, the parties must have intended them to mean different things.[63]

We agree with the Pennsylvania Superior Court's reasoning in *Clarke* and conclude the parties must have intended different meanings to the exclusion and the exception based on their use of different words.[64] Here, unlike in *Clarke*, the different language is used in the *same* subsection of the Policy. It is wholly illogical and would be counter to basic drafting and interpretative principles to conclude the parties here intended the exception and exclusion to carry the same meaning despite their decision to use two different verbs within the same

9

subsection. The parties' decision to use different language in the exception and exclusion leads us to conclude they intended to *exclude* all "other structures" used to *store* business property but *cover* other structures which merely *contain* business property solely owned by the insured.

Our conclusion is also confirmed by the ordinary meanings of the otherwise undefined terms "store" and "contain."[65] "Store" is defined as "to leave or deposit in a store, warehouse, or other place for keeping, preservation, or disposal."[66] Merriam-Webster provides examples of the use of the word "store" in this context, including: "potatoes *stored* in a basement," "the center mall is often used to *store* snow plowed from the pavement in winter months," and "honey *stored* in hives."[67] "Contain" is defined as "to have within."[68] Merriam-Webster provides the following example: "the box *contained* only some old papers and a few odds and ends."[69] Tellingly, "store" and "contain" are not synonymous nor are they considered related words.[70] "Store" and "contain" simply do not mean the same thing. There is a purpose contained—no pun intended—within the definition of "store." In the context of this Policy, when someone stores something in an "other structure," he or she places the item in the "other structure" for *the purpose* of preservation or safe-keeping until some future date when the item is needed.[71] This interpretation is further supported by the prefatory language "other structures *used to* store" in the exclusion. The same is not true for "contain." There is no purpose element within the definition of "contain" nor is there the same prefatory language before "contains" in the Policy. We conclude the use of two verbs with two different ordinary meanings in the same subsection of the Policy confirms the parties contracted for two different things.

This exclusion is not ambiguous. Mr. Montgomery argues the Policy is ambiguous as to the "conducting" business exclusion, not this one. But we only give effect to the Policy's clear, unambiguous language, leading us to evaluate whether the language in the "stor[ing] business

property" exclusion and exception is ambiguous.[72] "Under Pennsylvania law, an insurance contract is ambiguous where it: '(1) is reasonably susceptible to different constructions, (2) is obscure in meaning through indefiniteness of expression, or (3) has a double meaning.'"[73] We must not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity."[74] And we give "straightforward language" in the Policy its natural meaning; the parties' disagreement over the meaning of the disputed language does not make it ambiguous nor does a policy's failure to define a specific term.[75] And whether "ambiguity exists cannot be resolved in a vacuum . . . but must instead be considered in reference to a specific set of facts."[76] We find the storing business property exclusion and exception unambiguous. The exclusion and exception are not reasonably susceptible to different constructions. Any other construction would fail to give effect to all provisions contrary to interpretative principles. And as discussed more fully below, it is clear the garage in this case **stored**, not merely contained, business property. Second, the exception and exclusion are not obscure in meaning through indefiniteness of expression. Finally, the exclusion and exception do not have a double meaning. We find the Policy unambiguous as a matter of law, and we apply its clear, unambiguous terms.

Our conclusion is consistent with giving effect to all provisions in the Policy. Mr. Montgomery argues the Policy provides $3,000 in coverage for "business property stored on the premises," albeit not in discussing this exclusion.[77] We consider his argument nonetheless, and this is simply not the case. First, contrary to the argument in his briefing, Mr. Montgomery stipulated to the accurate representation of the Policy's coverage in the parties' stipulation of undisputed material facts.[78] Second, the text of the Policy squarely contradicts his argument. The Policy imposes "special limits of liability" for certain categories of *personal property* as indicated on the declarations page.[79] One limit includes "k. [c]overed property, **on** the 'residence

premises', used primarily for 'business' purposes."[80] The limit imposed on the declarations page under the "Personal Property–Special Limits of Liability" in subsection "k." (directly correlated to the text of the Policy) is $3,000.[81] Thus, the coverage is for *personal property* **on** (not **stored** on) the residence premises used primarily for business purposes, and this covered personal property has a sublimit of $3,000 in coverage.[82] But even if we accepted Mr. Montgomery's assertion as true the Policy will pay an insured $3,000 for business property **on** the residence premises, this is entirely consistent with our finding the Policy covers an "other structure" which contains business property owned by the insured, but does not cover an "other structure" used to *store* business property. Of course, if a structure on the Property contains business property, the business property is **on** the "residence premises" as provided for in the personal property coverage section. Thus, our holding today gives effect to all terms of the Policy even if we accept Mr. Montgomery's Policy interpretation as true.

The record is abundantly clear Mr. Montgomery used the garage to store business inventory. We conclude "store" and "contains" mean two different things under the Policy. Thus, the garage did not merely "contain" business inventory; Mr. Montgomery used the garage for storing business inventory, conduct explicitly excluded under the Policy. The exception does not apply as a matter of law.

### 2. Mr. Montgomery has not shown he—as the named insured—owned the business property in the garage.

We hold the exclusion for storing business property excludes coverage for "other structures" used to store business property regardless of who owns the business property stored in it. And we find the exception to the exclusion providing coverage for "other structures" which contain business property does not apply to inventory admittedly stored in the garage for a

decade. Mr. Montgomery used the detached garage to store business property, and the exception to the exclusion does not apply.

But assuming we could ignore the plain meaning of "contains" to somehow be the same as "store" to allow the exception to the exclusion to swallow the exclusion, Mr. Montgomery would still need to show the insured owed the business property contained in the garage to meet the exception. And so the parties invested ink in addressing who owns the property in the garage based on whether the owner of the inventory—One of a Kind LLC—is a limited liability company or a sole proprietorship. No one disputes One of a Kind LLC is not the insured.

It appears Mr. Montgomery went through the entire litigation conceding One of a Kind LLC is a limited liability company but changed his position at summary judgment, now maintaining an entity known as One of a Kind LLC is really a sole proprietorship owned by him, and thus he solely owns the inventory in the garage.

Travelers maintains the business which owned the property in the garage, One of a Kind LLC, is a limited liability company.[83] Because it is a limited liability company, Travelers argues it is an entity distinct from its members, and Mr. Montgomery (as the insured) cannot solely own the business property even if he is the only member of a limited liability company.[84] Mr. Montgomery counters characterizing One of A Kind LLC as a limited liability company is "without any support in the record," "completely fabricated . . . from facts that do not exist", and the only "direct evidence" in the record suggests One of A Kind LLC is a sole proprietorship.[85]

Mr. Montgomery's argument lacks evidentiary support or legal merit. First, Travelers's assertion One of a Kind LLC is a limited liability company is wholly supported by Mr. Montgomery's sworn statements. He swore under penalty of perjury he owned "One of a Kind, LLC" on the date of the fire.[86] He stipulated in a joint statement of undisputed facts "[t]he

business inventory in the detached garage was owned by One of [a] Kind LLC."[87] He testified under penalty of perjury confirming "One of a Kind, LLC" is an import company which he owns.[88] He never testified One of a Kind LLC is a sole proprietorship; he did testify One of a Kind LLC may be a limited liability partnership.[89] So, on his best day, Mr. Montgomery either admits One of a Kind LLC is a limited liability company or maybe a limited liability partnership. Ignoring his sworn statements, Mr. Montgomery now asserts One of a Kind LLC is a sole proprietorship. He relies on his accountant's testimony One of a Kind is a sole proprietorship and then clarifying "I don't know that One of a Kind is an LLC"[90] and the absence of the LLC designation on his tax forms.[91]

We unfortunately have no idea if One of a Kind LLC is a limited liability company, limited liability partnership, sole proprietorship, or something else.[92] Mr. Montgomery's sworn admissions and continued use of the LLC designation after "One of a Kind" in this litigation, despite not being permitted by law to do so if it is indeed a sole proprietorship, strongly suggest it is in fact a limited liability company.[93] And we are unpersuaded the omission of "LLC" on tax forms conclusively determines One of a Kind LLC is a sole proprietorship due to Mr. Montgomery's evident carelessness with the use or omission of the LLC designation. But, alas, we have conflicting sworn testimony. We do not know the entity status of One of a Kind LLC, but we do know it owns the business inventory and it is not the insured.[94] Mr. Montgomery's evolving understanding of the ownership of One of a Kind LLC is not material to our finding. His evolving understanding only confirms he cannot show an insured solely owned the business property admittedly stored in the garage.

Again, while Mr. Montgomery cannot meet his burden, Travelers has done so. We enter judgment in Travelers's favor because we find "store" and "contain" mean two different things,

and the overwhelming, undisputed evidence confirms the detached garage stored business property regardless of who owns the non-insured One of a Kind LLC which in turn owns the inventory stored in the garage. The exception to the exclusion does not provide coverage. Travelers did not breach the contract by failing to cover the damage to the garage.

### III. Conclusion

Travelers demonstrated no genuine issue of material fact precludes summary judgment in its favor on Mr. Montgomery's breach of contract claim as a matter of law. We grant Travelers's motion and deny Mr. Montgomery's motion for summary judgment.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and a joint appendix in support of cross motions for summary judgment. The parties prepared a Joint Appendix in support of their cross-motions for summary judgment (ECF Doc. No. 15-4). References to the Joint Appendix are by Bates number (for example, "JA 1"). Plaintiff Bryan Montgomery filed his Motion for summary judgment and supporting memorandum of law at ECF Doc. Nos. 14, 14-2 and his statement of undisputed material facts at ECF Doc. No. 14-2 ("Montgomery's SUMF"). Defendant Travelers Personal Insurance Company filed its Motion for summary judgment and supporting memorandum of law at ECF Doc. Nos. 15, 15-2 and its statement of undisputed material facts at ECF Doc. No. 15-1 ("Travelers's SUMF"). Mr. Montgomery responded to Travelers's Motion at ECF Doc. No. 16-1 and its statement of undisputed material facts at ECF Doc. No. 16 (Montgomery's Response to SUMF). Travelers responded to Mr. Montgomery's Motion at ECF Doc. No. 17-1 and his statement of undisputed material facts at ECF Doc. No. 17 ("Travelers's Response to SUMF").

[2] Montgomery's SUMF ¶ 1; Travelers's Response to SUMF ¶ 1; JA 392 ¶¶ 1, 3–5.

[3] Travelers's SUMF ¶ 3; Montgomery's Response to SUMF ¶ 3.

[4] Travelers's SUMF ¶¶ 2, 4; Montgomery's Response to SUMF ¶¶ 2, 4.

[5] Travelers's SUMF ¶ 4; Montgomery's Response to SUMF ¶ 4.

[6] Travelers's SUMF ¶¶ 6–10; Montgomery's Response to SUMF ¶¶ 6–10 (admitting relevant facts but disputing the entity status of One of a Kind).

[7] Travelers's SUMF ¶ 13; Montgomery's Response to SUMF ¶ 13 (admitting relevant facts but disputing the entity status of One of a Kind); *see also* JA 394 ¶¶ 20–22.

[8] Travelers's SUMF ¶ 18, Montgomery's Response to SUMF ¶ 18; *see also* JA 384 (interrogatory response 9); JA 394 ¶¶ 20–22; Montgomery SUMF ¶ 35 ("The garage was used for storage for business and personal items."), Travelers's Response SUMF ¶ 35 (admitting fact); Travelers's SUMF ¶¶ 19–23, Montgomery's Response to SUMF ¶¶ 19–23 (admitting facts he stored business property in the garage); *see also infra* n.38 (judicial admissions he stored business property in the garage); *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 211, 211 n.20 (3d Cir. 2006) (statements in briefs constitute judicial admissions).

[9] Travelers's SUMF ¶ 21; Montgomery's Response to SUMF ¶ 21.

[10] JA 394 ¶ 22.

[11] JA 394 ¶ 20.

[12] JA 392 ¶ 1; JA 11–60 (Policy).

[13] JA 392 ¶ 1; JA 11.

[14] JA 11 (Declarations page); Travelers's SUMF ¶ 54; Montgomery's Response to SUMF ¶ 54.

[15] JA 22 ("We insure against direct physical loss to property described in Property Coverages A [dwelling] and B [other structures]").

[16] JA 22.

[17] JA 392 ¶ 6.

[18] JA 22.

[19] *Id.* The exception is more fulsome. We include only the relevant language in the exception here.

[20] JA 17.

[21] JA 393 ¶ 8.

[22] *Id.* ¶ 9.

[23] *Id.* ¶¶ 10–13.

[24] *Id.* ¶ 15; *see also* Montgomery's SUMF ¶ 20; Travelers's Response to SUMF ¶ 20. They agree the damage to the garage is $189,662.83. JA 393 ¶ 16.

[25] ECF Doc. No. 1-4 (state court complaint attached to notice of removal).

[26] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)). We do not weigh evidence or make credibility determinations. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)).

"The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Id.* (citing *Celotex Corp.*, 477 U.S. at 322–23).

"This standard does not change when the issue is presented in the context of cross-motions for summary judgment." *Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (quoting *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987)). "When both parties move for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Id.* (quoting 10A Charles Alan Wright et al., Federal Practice & Procedure § 2720 (3d ed. 2016)).

[27] ECF Doc. No. 14-2 at 11 (applying Pennsylvania law); 15-2 at 7–8 (same).

[28] *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 635 Pa. 427, 445 (Pa. 2016) (further citation omitted).

[29] ECF Doc. No. 14-2 at 11; JA 392–93 ¶¶ 1, 16.

[30] *See, e.g.*, ECF Doc. Nos. 15-2, 17-1; *see also* JA 22.

[31] *See, e.g.*, ECF Doc. Nos. 14-2, 16-1, 18.

[32] *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011) (quoting *Home Ins. Co. v. Law Offices of Jonathan DeYoung*, 32 F. Supp. 2d 219, 223 (E.D. Pa. 1998)).

[33] *Westport Ins. Corp. v. Hippo Fleming & Pertile Law Offices*, 791 F. App'x 321, 323 (3d Cir. 2019) (citing *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 745–46 (3d Cir. 1999)); *Am. Auto Ins. Co.*, 658 F.3d at 320 (citing *C.H. Heist Caribe Corp. v. Am. Home Assurance Co.*, 640 F.2d 479, 481 (3d Cir. 1981)).

[34] *Am. Auto. Ins. Co.*, 658 F.3d at 320–21 (quoting *Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 432 F. Supp. 2d 488, 495 (E.D. Pa. 2006) (further citation omitted)).

[35] *Gen. Refractories Co. v. First State Ins. Co*., 855 F.3d 152, 158 (3d Cir. 2017) (quoting *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007)).

[36] *Lomma v. Ohio Nat'l Life Assurance Corp.*, 788 F. App'x 104, 107 (3d Cir. 2019) (citing *Minn. Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 861 (Pa. 2004)).

[37] *Am. Auto. Ins. Co.*, 658 F.3d at 321 (quoting *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999)).

[38] ECF Doc. Nos. 14-2 at 16, 16-1 at 13.

[39] JA 22. The Policy provides:

### PROPERTY COVERAGE B – OTHER STRUCTURES

    **1.**    We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection. It also includes other structures that are not buildings, including driveways, walkways, and patios.

[40] JA 392 ¶¶ 2–6.

[41] JA 22. The Policy provides:

### PROPERTY COVERAGE B – OTHER STRUCTURES

******

    **2.**  We do not cover:

******

      **c.**      Other structures from which any 'business' is conducted; or

      **d.**      Other structures used to store 'business' property. We do cover a structure that contains 'business' property solely owned by an 'insured' or a tenant of the dwelling provided that 'business'

> property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

[42] *See supra* n.41. The exception contains limiting language related to gaseous and liquid fuel which is not applicable here.

[43] Montgomery's SUMF, ¶ 10; ECF Doc. No. 14-2 at 10, 16, 18–19; Montgomery's Response to SUMF ¶ 36; ECF Doc. No. 16-1 at 5, 7, 9–10, 13, 17.

[44] *See supra* n.43. For example, Mr. Montgomery argues:

> Moreover, the ambiguities in the policy do not stop with Defendant's failure to include precise language, but language that is included created even more interpretational problems. The Defendant equates the storage of business property in the detached garage with conducting business on the property, however it ignores the plain language of the policy which provides coverage for other structures used to store business property:
>
> > **d.** Other structures used to store "business" property. We do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.
>
> Joint Appendix at page 22. Further, while not a part of this lawsuit, the policy actually provides

ECF Doc. No. 14-2 at 18.

[45] JA 22.

[46] *Id.* (emphasis added).

[47] *See* JA 384 (interrogatory response 9); JA 394 ¶¶ 20–22; Montgomery SUMF ¶ 35 (The garage was used for storage for business and personal items.), Travelers's Response SUMF ¶ 35 (admitting fact); Travelers's SUMF ¶¶ 18–23, Montgomery's Response to SUMF ¶¶ 18–23 (admitting facts he stored business property in the garage); *see also supra* n.38 (judicial admissions he stored business property in the garage); *Berckeley Inv. Grp., Ltd.*, 455 F.3d at 211, 211 n.20 (statements in briefs constitute judicial admissions).

[48] *See, e.g.*, ECF Doc. No. 16-1 at 5, 9–10

[49] JA 22.

[50] By way of example—and assuming Mr. Montgomery did not store his business inventory in the detached garage—had Mr. Montgomery left his work bag containing his business laptop in the garage overnight, Travelers would still be required to provide coverage for the garage. The exception ensures the Policy does not exclude coverage for the garage merely because the garage "contained" business property at the time of the fire.

[51] ECF Doc. No. 16-1 at 5.

[52] ECF Doc. No. 15-2 at 12–15.

[53] *Id.*

[54] JA 22 (emphasis added).

[55] *Clarke v. MMG Ins. Co.*, 100 A.3d 271, 277 (Pa. Super. Ct. 2014) (citing *Cohen v. Erie Indem. Co.,* 14 Pa. D. & C.3d 444, 448 *affirmed,* 432 A.2d 596 (1981) (insurance policy subsections would be similarly phrased if their intention were the same); *Farmers Ins. Co. of Washington v. U.S.F. & G. Co.,* 13 Wash.App. 836, 537 P.2d 839, 842 (1975) (same); *cf.* 101 Pa.Code § 15.141(b)(5) (guidelines for choice of words and phrases in legislative drafting) ("[u]se the same word throughout if the same meaning is intended and do not use the same word to denote different meanings")).

[56] 100 A.3d 271 (Pa. Super. Ct. 2014).

[57] *Id.* at 275.

[58] *Id.*

[59] *Id.*

[60] *Id.* at 276.

[61] *Id.* at 276–77.

[62] *Id.* at 277–78.

[63] *Id.* at 277–78.

[64] *Id.*

[65] *Am. Auto. Ins. Co.*, 658 F.3d at 320–21 (quoting *Melrose Hotel Co.*, 432 F. Supp. 2d at 495).

[66] Merriam-Webster Unabridged Dictionary, *Store*, https://unabridged.merriam-webster.com/unabridged/store (last accessed May 12, 2022). Oxford English Dictionary, *Store*, https://www.oed.com/view/Entry/190929?rskey=hOjT2o&result=2#eid (last accessed May 12,

2022). The Oxford English Dictionary confirms the same: "store" means "[t]o deposit (goods, furniture, etc.) in a store or warehouse for temporary preservation or safe-keeping."

[67] Merriam-Webster, *supra* n.66.

[68] Merriam-Webster Unabridged Dictionary, *Contain*, https://unabridged.merriam-webster.com/unabridged/contain (last accessed May 12, 2022). The Oxford English Dictionary confirms the same: "contain" means "[t]o have in it, to hold." Oxford English Dictionary, *Contain*, https://www.oed.com/view/Entry/40041?redirectedFrom=contain#eid (last accessed May 12, 2022).

[69] Merriam-Webster, *supra* n.68.

[70] *See* Merriam-Webster Collegiate Thesaurus, *Store* (verb), https://unabridged.merriam-webster.com/thesaurus/store (last accessed May 12, 2022); *id.*, *Contain*, https://unabridged.merriam-webster.com/thesaurus/contain (last accessed May 12, 2022).

[71] Merriam-Webster, *supra* n.66; Oxford English Dictionary, *supra* n.66.

[72] *Lomma*, 788 F. App'x at 107 (citing *Minn. Fire & Cas. Co.*, A.2d at 861).

[73] *First Liberty Ins. Corp. v. McGeehan*, 809 F. App'x 75, 78 (3d Cir. 2020) (quoting *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 419 (3d Cir. 2011)).

[74] *Lomma*, 788 F. App'x at 107 (quoting *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)).

[75] *McGeehan*, 809 F. App'x at 78 (quoting *Lawson v. Fortis Ins. Co.*, 301 F.3d 159, 163 (3d Cir. 2002) then citing *Trombetta v. Raymond James Fin. Servs., Inc.*, 907 A.2d 550, 562 (Pa. Super. Ct. 2006)); *Walker v. Foremost Ins. Co.*, No. 20-4966, 2022 WL 612716, at *4 (E.D. Pa. Mar. 2, 2022) (further citation omitted) (citation in F. Supp. 3d forthcoming).

[76] *Lititz Mut. Ins. Co. v. Steely*, 785 A.2d 975, 978 (Pa. 2001).

[77] ECF Doc. Nos. 14-2 at 18 (but conceding this is not at issue in the lawsuit), 16-1 at 10.

[78] JA 392 ¶ 7 ("The Policy includes coverage for personal property of the insured utilized for business purposes and on the Residence Premises, subject to a sublimit of $3,000."). We must note, though, Travelers's careless admission to Mr. Montgomery's SUMF ¶ 28. *See* Travelers's Response to SUMF ¶ 28. Despite Travelers's careless admission implying coverage where the plain text of the Policy seemingly does not, we cannot ignore the plain text of the legal contract the parties agreed to in interpreting the contract.

[79] JA 24–25. The Policy provides:

---

**PROPERTY COVERAGE C – PERSONAL PROPERTY**

\* \* \* \* \* \*

3. **Special Limits of Liability.** The following categories of personal property are covered only up to the Special Limits of Liability indicated below or shown in the Declarations. . . .

\* \* \* \* \* \*

k.        Covered property, on the 'residence premises', used primarily for 'business' purposes.

[80] *Id.* (emphasis added).

[81] JA 12. It appears both parties take the shorthand on the Declarations page—"**k.** Business property on the residence premises"–and evidently conclude the Policy covers business property stored on the residence premises. JA 12. But the text of the Policy clearly provides the limitation is under *personal property* and applies to "[c]overed property, on the 'residence premises', **used primarily for 'business' purposes**." JA 25 (emphasis added). The limit does not apply to "business property" as used in the exclusion and the exception. Travelers's admission (*supra* n. 78) cannot alter the unambiguous terms of the Policy.

[82] *Id.* at 12, 24–25.

[83] ECF Doc. No. 15-2 at 13–14.

[84] *Id.*

[85] ECF Doc. No. 16-1 at 6.

[86] JA 383 (Interrogatory response 5), 386.

[87] JA 394 ¶ 20.

[88] JA 80, Tr., 20:8–10; JA 89, Tr., 29:2–4.

[89] JA 217, Tr. 59:20–22.

[90] JA 331, Tr. 28:11–29:2.

[91] ECF Doc. No. 16-1 at 6.

[92] The summary judgment record provides numerous names for "One of a Kind" including "One of a Kind, LLC" (JA 383 ¶ 5), One of a Kind Imports (*see, e.g.*, JA 121, JA 389), and One of a Kind (JA 390). Searching "One of a Kind" in the public record corporation search results in fifty-six entries. Pennsylvania Department of State, https://www.corporations.pa.gov/search/corpsearch (last visited May 15, 2022). We reviewed every entry containing a business name of "One of a Kind" but found no entries registered to

Bryan Montgomery despite Mr. Montgomery testifying he still owns "One of a Kind, LLC." JA 89, Tr: 29:2–4. We found one entry for "One of a Kind L.L.C" registered to an address in Philadelphia but with no officers listed. We also reviewed an entry for "One-of-a-Kind Imports" registered to "C R Montgomery" with a Philadelphia address. We cannot confirm any of these is the correct entity. The entity may be unregistered, or perhaps it is registered in a different state. Mr. Montgomery has not demonstrated he is the owner of this entity sufficient to warrant a finding the exception applies as a matter of law even if we could interpret "store" to mean "contains."

[93] *Bauer v. Pennsylvania State Bd. of Auctioneer Examiners*, 154 A.3d 899, 910 (Pa. Commw. Ct. 2017) (citing 54 Pa. C.S. § 311(b)(1) (prohibiting registration of fictitious names that "contain a corporate designator such as 'corporation,' 'incorporated' or 'limited' or any derivation or abbreviation thereof unless the entity or at least one entity named in the application for registration of fictitious name is a corporation").

[94] *See, e.g.*, *Mason v. Travelers Home & Marine Ins. Co*., No. 11-2155, 2013 WL 12244912, at *4 (M.D. Pa. Feb. 28, 2013) (finding exception to exclusion did not apply when corporation owned the business property even though insureds solely owned the corporation); *Glidden Co. v. Dep't of Lab. & Indus.*, 700 A.2d 555, 558 (Pa. Commw. Ct. 1997) ("A sole proprietorship has no existence separate and apart from its owner . . . Thus, in a sole proprietorship, the owner/sole proprietor . . . personally holds both the assets and liabilities of the business, including contractual rights and duties."); *see also* 6 West's Pa. Forms, Business Organizations §§ 2:3 (Sole Proprietorship), 2.5.20 (Limited Liability Company),  3:2 (Comparison of Business Entities-Practical Factors); 3.3 (Comparison of Business Entities-Tax Factors).